IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KATHLEEN CLAYBAUGH**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-2587-L** |
| | § | |
| **BANK OF AMERICA, NA;** and | § | |
| **KEITH ABRAHAM**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion to Remand, filed August 9, 2012. After careful consideration of the motion, response, reply, record, and applicable law, the court **denies** Plaintiff's Motion to Remand.

**I.    Background**

Kathleen Claybaugh ("Plaintiff" or "Claybaugh") originally filed this action on July 6, 2012, against Bank of America, NA, ("BOA") and Keith Abraham ("Abraham") in County Court at Law No. 1, Dallas County, Texas. Claybaugh asserted claims of disability discrimination, disability harassment, disability retaliation, age discrimination, age harassment, and age retaliation against BOA in violation of the Texas Commission on Human Rights Act ("TCHRA") as codified in sections 21.051 and 21.055 of the Texas Labor Code. The sole claim asserted against Abraham by Claybaugh is the Texas common law claim of intentional infliction of emotional distress ("IIED"). Pl.'s Original Pet. 5-6.

On July 30, 2012, BOA removed the action to federal court, contending that diversity of citizenship exists between Plaintiff and BOA and that the amount in controversy, exclusive of

interest and costs, exceeds $75,000. BOA also contends that Defendant Abraham was improperly joined to defeat diversity and that the court should therefore disregard Abraham's citizenship. BOA makes this argument because Claybaugh and Abraham are both citizens of Texas, and it contends that there is no reasonable possibility that Claybaugh will be able to establish a claim for IIED against Abraham. According to BOA, the Texas Supreme Court cases of *Creditwatch Incorporated v. Jackson*, 157 S.W.3d 814 (Tex. 2005), and *Hoffman-LaRoche, Incorporated v. Zeltwanger*, 144 S.W. 3d 438 (Tex. 2004), preclude Plaintiff from establishing an IIED claim against Abraham. Claybaugh counters that the IIED claim against Abraham is viable and that BOA has failed to carry its burden that there is no possibility that Plaintiff could recover on her IIED claim against Abraham.

## II.     Improper Joinder Standard

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id*. at 572. Accordingly, the court uses the term "improper joinder" in this opinion.

As the party wishing to invoke federal jurisdiction by alleging improper joinder, BOA must establish that Abraham was joined by Claybaugh to defeat diversity of citizenship and therefore subject matter jurisdiction. Subject matter jurisdiction based on diversity of citizenship exists only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. §

**Memorandum Opinion and Order – Page 2**

1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant.* *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

To establish improper joinder, BOA must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since BOA does not assert fraud by Plaintiff, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d

---

* The requirement of 28 U.S.C. § 1332(a)(1) that the amount in controversy exceed $75,000 is not in dispute.

at 312 (internal quotations and citations omitted).  "This possibility, however, must be reasonable, not merely theoretical." *Id*.  If there is a reasonable possibility that Plaintiff can recover on any of her claims, the case must be remanded.  In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted).

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990).

### III. Discussion

#### A. Common Law Tort of IIED

The tort of IIED, "first and foremost," is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Zeltwanger*, 144 S.W.3d at 447 (citing *Standard Fruit & Vegetable Co. v Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* (citations omitted).  Under *Zeltwanger*, if a plaintiff files a common law claim for IIED and also

files a statutory claim under the TCHRA, and the "gravamen of the plaintiff's complaint is for [the statutory claim], the plaintiff must proceed solely under [the] statutory claim unless there are additional facts, unrelated to [the statutory claim], to support an independent tort claim for intentional infliction of emotional distress." *Id.* at 441. If the statutory scheme makes available a remedy for essentially the same conduct as would the common law tort, there is "no gap to fill." *Creditwatch*, 157 S.W.3d at 816. BOA contends that Plaintiff's statutory claim and IIED claim are based on the same conduct and therefore Plaintiff must proceed solely under the TCHRA and may not maintain a common law claim for IIED. For this reason, BOA argues that there is no reasonable basis to believe that Plaintiff might recover on her IIED claim.

Claybaugh counters that *Zeltwanger* does not preclude recovery for her IIED claim against Abraham because *Zeltwanger* was directed toward the employer, not a fellow employee or supervisor, and *Zeltwanger* therefore does not preclude an IIED claim against a supervisor. Ample support is found for Plaintiff's position in *Dixon v. State Farm Mutual Automobile Insurance Company*, 433 F. Supp. 2d 785 (N.D. Tex. 2006), a well-written opinion by United States District Judge David Godbey, and other district court cases. On the other hand, BOA cites several district court cases that support its position. Indeed, the applicable statute, section 21.051 of the Texas Labor Code, is titled "Discrimination by Employer," and by its plain text appears to apply only to employers. The court, however, need not address this issue and the to-and-fro between the parties generated by the conflicting cases cited by them, as it believes the allegations of Plaintiff's Original Petition ("Petition") are insufficient for it to determine that a reasonable basis exists for concluding that Plaintiff might be able to recover in state court on her claim of IIED. Although the sufficiency of Plaintiff's pleadings was only obliquely addressed in BOA's response to Plaintiff's Motion to Remand, BOA did address the issue in its Notice of Removal.

**Memorandum Opinion and Order – Page 5**

Moreover, Claybaugh thoroughly addressed the sufficiency of her pleadings in Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Remand. Accordingly, the court considers the issue of the sufficiency of Plaintiff's pleading to be fully joined. The court thus turns its attention to the sufficiency of the allegations of Plaintiff's Petition.

### B. Plaintiff's Pleadings

#### 1. State Requirements for Civil Pleadings

Claybaugh is correct in stating that the state standard for pleadings is more relaxed than the federal standard. A pleading in district or county courts of Texas is to include a "statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole." Tex. R. Civ. P. 45(b). Texas courts are not to "give pleadings a too cabined reading." *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995). Under Texas law, the pleading standard is one of "fair notice," "which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial." *Penley v. Westbrook*, 146 S.W.3d 220, 232 (Tex. App.—Fort Worth 2004), *rev'd on other grounds*, 231 S.W.3d 389 (Tex. 2007). A state court petition is to be liberally construed and is adequately pleaded if one can reasonably infer a cause of action from what is stated in the petition, even if the pleading party fails to allege specifically one of the elements of a claim. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (citations omitted).

#### 2. Federal Requirements for Civil Pleadings

As previously stated, the federal standard is more stringent than the Texas pleading standard with respect to the sufficiency of the allegations to state a claim or cause of action. To

**Memorandum Opinion and Order – Page 6**

defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The

**Memorandum Opinion and Order – Page 7**

pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### C. Applicability of Texas Pleading Standard

The court agrees with Plaintiff that the Texas pleading standard should be applied by the court in evaluating the sufficiency of the allegations contained in Plaintiff's Petition. In an unpublished opinion, the Fifth Circuit applied Texas's "fair notice" pleading standard rather than the federal standard to determine whether the allegations of the petition in a removed case were sufficient to allege a claim under state law. *De La Hoya v. Coldwell Banker Mexico, Inc.*, 125 F. App'x 533, 537-38 (5th Cir. 2005). Although *De La Hoya* is unpublished, its application of the Texas pleading standard is logical. When a party files suit in a Texas court, the party expects to be governed by the rules of the game that apply to the civil pleading requirements of that state court system. The court does not believe that a pleader in state court should be so hapless that she is put in the untenable position of having to anticipate removal to a federal court system that applies a more exacting pleading standard. Fundamental fairness compels that the standard applicable at the time the initial lawsuit was filed in state court or removed should govern. For these reasons, the court applies the Texas "fair notice" standard to the allegations of the Petition.

### D. Sufficiency of Plaintiff's Pleadings

Texas courts, do not require much as to the sufficiency of pleadings; however, the allegations of the Petition are "bare-bones" or "threadbare." This court cannot say that the allegations against Abraham meet the "fair notice" standard that governs in the Texas court system. The totality of Plaintiff's factual allegations is as follows:

7. Plaintiff is a sixty-four year old white female.

8. Plaintiff started working for BOA on or about April 25, 2005.

9. Plaintiff worked in the SLRM Department as a Loan Servicing Specialist.

**Memorandum Opinion and Order – Page 9**

10. Plaintiff suffers from attention deficit/hyperactivity disorder (ADHD) and depression.

11. Plaintiff never reported to Keith Abraham, but Abraham constantly harassed Plaintiff because of her age and her disability.

12. In September 2011, Lauren Cupp became Plaintiff's immediate supervisor.

13. At that time, Cupp reported to Faustino Galvin. Galvin reported to Terry Bond. Bond reported to Cody Mahon.

14. When Cupp became Plaintiff's supervisor, she started harassing Plaintiff as well.

15. Cupp and Abraham's harassment caused and/or exacerbated Plaintiff's depression.

16. On or around February 1, 2012, Plaintiff was scheduled for a medical appointment for the treatment of her ADHD.

17. Plaintiff scheduled the appointment after business hours so as not to interfere with her work.

18. Lauren Cupp, Plaintiff's immediate supervisor, came to Plaintiff and told her she needed to work late to finish the work of another employee.

19. Plaintiff informed Cupp that she had a doctor's appointment that she needed to keep for the treatment of her ADHD.

20. Cupp insisted that Plaintiff needed to work late to complete the work of the other employee.

21. When Plaintiff asked if she was being told that she could not leave for the medical appointment, Cupp told her, "I'm not telling you that you can go, and I'm not telling you that you can't go," or words to similar effect.

22. Because Plaintiff had already scheduled the appointment to ensure that it did not interfere with work, and because the appointment was important to Plaintiff's medical care and treatment for her ADHD, Plaintiff went to the appointment.

23. The next day, Cupp and Galvin disciplined Plaintiff for allegedly failing to complete all her assignments the previous day.

> 24. The only assignments Plaintiff did not complete were those of the other employee.
>
> 25. Plaintiff protested being disciplined for not completing the work of another employee due to Plaintiff keeping a medical appointment.
>
> 26. When Plaintiff told Cupp and Galvin that it was not right that she was disciplined for essentially being sick, Abraham commented, "For thirteen weeks?" insinuating that Plaintiff had been sick for thirteen weeks.
>
> 27. When Plaintiff, who was already under duress from Cupp, Galvin, and Abraham's constant harassment, responded using a curse word, BOA immediately terminated Plaintiff's employment.
>
> 28. Galvin, Cupp, and Abraham have all used curse words before without repercussions, as have other employees working with Plaintiff.
>
> 29. Following Plaintiff's termination, BOA's Human Resources Department finally began to investigate Plaintiff's complaints.

Pl.'s Orginal Pet. ¶¶ 7-29. With respect to her IIED claim against Abraham, Claybaugh states the following:

> 55. Abraham's conduct, including, but not limited to, his constant harassment of Plaintiff, especially knowing Plaintiff suffered from depression, was extreme and outrageous and beyond the bounds of decency in a civilized society.
>
> 56. Abraham's conduct was designed to intentionally inflict, and did inflict, severe and extreme emotional distress on Plaintiff.

*Id*. ¶¶ 55-56.

The elements of a claim for IIED are: "1) the defendant acted intentionally, or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 (1965)). The Texas Supreme Court defines extreme and outrageous conduct as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

**Memorandum Opinion and Order – Page 11**

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (citations and internal quotation marks omitted). Claims of IIED "do not extend to ordinary employment disputes." *Creditwatch*, 157 S.W.3d at 817. "[E]xcept in circumstances bordering on serious criminal acts," conduct "will rarely have merit" as a claim for IIED. *Id.* at 818 (citations omitted).

The court has pored over the relevant allegations of Plaintiff's Petition, and there are no allegations to remotely suggest that the acts of which Plaintiff complains are anything beyond the realm of an ordinary employment dispute. Stated another way, the allegations of Plaintiff's Petition, when given a liberal reading, do nothing to put the court or BOA on notice that the acts of which Plaintiff complains go beyond the realm of an ordinary employment dispute and into the realm of extreme and outrageous conduct. Moreover, the allegations of Claybaugh's IIED claim against Abraham are inextricably intertwined with those she makes against BOA regarding claims of discrimination and retaliation related to her employment with BOA. Accordingly, given the paucity of Plaintiff's allegations and the Texas Supreme Court's pronouncement that success on an IIED claim is rare for conduct not "bordering on serious criminal acts," the court has no reasonable basis to believe or conclude that Plaintiff might be able to recover on her IIED claim in state court. At best, Claybaugh has shown by her allegations that a theoretical possibility exists that she might recover on her IIED claim; however, such showing is insufficient.

## IV.   Request for Hearing Oral Argument

Claybaugh requested that the court permit oral argument on Plaintiff's Motion to Remand. The court **denies** this request, as the positions of the parties have adequately set forth

**Memorandum Opinion and Order – Page 12**

in their briefs, and the court **determines** that oral argument will not assist it in the resolution of the issues raised by Plaintiff's Motion to Remand.

**V.      Conclusion**

For the reasons herein stated, the court determines that Abraham was improperly joined as a defendant to defeat diversity jurisdiction. Accordingly, the court **disregards** Abraham's citizenship, **determines** that complete diversity of citizenship exists between the parties, **determines** that it has subject matter jurisdiction over the action, and **denies** Plaintiff's Motion to Remand.

**It is so ordered** this 29th day of March, 2013.

*[signature: Sam A. Lindsay]*

Sam A. Lindsay
United States District Judge